UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDINA, et al. | No. C 08-3946 WDB |
| Plaintiffs, | ORDER REJECTING RATIFICATION INSTRUCTION FOR FAILURE OF EVIDENTIARY SUPPORT |
| v. | |
| CITY OF MENLO PARK., et al. | |
| Defendants. | |

Having considered the arguments presented orally by counsel and the pertinent additional authorities, the Court has concluded that Plaintiffs have not made a showing sufficient to entitle them to submit to the jury a claim against the City of Menlo Park based on a ratification theory of municipal liability.

To impose liability on a local government on a ratification theory pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), Plaintiffs must prove that a person or entity (1) with final policy making authority in the pertinent arena ("in a particular area, or on a particular issue," McMillian v. Monroe County, 520 U.S. 781, 785 (1997)) (2) had "knowledge of the constitutional violation and [3] actually approve[d] of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a §1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). Whether specified persons

1

have or a given entity has 'final policy making' authority in a particular area is a matter of state law and is to be determined by the Court, not a jury.

In the case at bar, Plaintiffs have presented to the Court no competent evidence that, under California law, Sergeants Prickett and Cowans had final policy making authority with respect to any particular area or issue. Standing alone, the undisputed fact that the Sergeants reviewed and signed the line officers' reports (and, in the case of Sergeant Prickett, his own report) of the incident does not establish that they had final policy making authority over anything. Nor would the existence of any such authority be established by the fact, if it were proved, that line officers' reports generally were not subject to review and signature by any higher ranked officers. Such a practice, even if formally sanctioned by a departmental rule, would not show that final authority to endorse (as departmental or City policy) a particular course of conduct had been delegated, pursuant to state law, to the Sergeants. Plaintiffs have presented no evidence about how, as a matter of law, final authority to set policy in any of the disputed areas (entry into private homes, use of force, or determining whether detentions or arrests should be made) might have worked its way down from the legislature, through the City, to the Chief of Police, and, from him down the chain of command to the Sergeants. Courts may not simply presume that "final policy making authority" descended from the state to these two officers. Any such line of descent must be proved.

A second infirmity in the purported underpinnings of the ratification theory is the contention that by signing the reports the Sergeants were in fact approving or endorsing (as policy at least in these circumstances) any specific course of conduct. Even if Plaintiffs had presented evidence that final policy making authority in the relevant arenas had been delegated to the Sergeants, it would be incumbent on Plaintiffs also to prove that before signing reports like these the Sergeants were charged with responsibility to pass judgment on the lawfulness of the conduct described in them and that their signatures on the reports signified endorsement or approval of the conduct described therein. More specifically, Plaintiffs seemed to contend during oral argument that by signing the reports in question the

two Sergeants were endorsing the unconstitutional use of Maria Medina as a 'buffer.' This argument seems to assume that, in the circumstances described in the reports, it would have been a per se violation of the Constitution to use Ms. Medina as a buffer. Plaintiffs have presented no authority to support that proposition. Absent proof that there is a per se ban (rooted in the Constitution) on the kind of conduct described in the reports, it is not clear that, when the Sergeants signed them, they were purporting to pass judgment on the use of this technique in these circumstances. As long as it was arguable, in a setting like that portrayed in the reports, that the use of a person as a buffer could be lawful, it is not clear that it would reasonable to view the Sergeants' signing of the reports as setting any policy. As the Lytle court reminds us, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a section 1983 claim." 382 F.3d at 987.

For the reasons set forth above, the Court will not instruct the jury, at the beginning of the trial, on a ratification theory.

IT IS SO ORDERED.

Dated: July 29, 2007

WAYNE D. BRAZIL
United States Magistrate Judge