United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEDINA, et al.

Plaintiffs,

v.

CITY OF MENLO PARK., et al.

Defendants.

_____/

No. C 08-3946  WDB

ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS; DEFENDANTS' BILL OF COSTS

On September 28, 2009, the Court held a hearing on Plaintiffs' motion for attorneys' fees and costs.  All parties were represented by counsel at the hearing.  For the reasons set forth below and stated at the hearing, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion, and awards fees to Plaintiffs Rodolfo Medina and Maria Medina in the amount of $87,898.50, and $11,242,54 in costs.

The Court further awards Defendants their costs taxed against all Plaintiffs except Rodolfo Medina in the amount of $19,530.20.

## **BACKGROUND**

On August 18, 2008, Plaintiffs filed this civil rights action against the City of Menlo Park and Police Officers Baxter, Nicholas, Prickett, Crutchfield and Venzon alleging unlawful activity by Menlo Park Police Officers upon entry into a private

1

residence located in Menlo Park, California, on September 1, 2007.  Plaintiffs Javier Anguiano, Hector Valencia, Samuel Salgado, Jose Espinoza, Rodolfo Medina, Francisco Leon, and Joel Vazquez-Medina were arrested the evening of Saturday, September 1, 2007.  Messrs. Valencia, Anguiano, Salgado, Espinoza, and Medina were each charged with violating Cal. Penal Code § 148(A)(1), a misdemeanor.  Messrs. Valencia, Anguiano, Salgado, and Espinoza were acquitted of any criminal wrongdoing after a jury trial on May 9, 2008.  No charges were filed against Mr. Leon or Mr. Vazquez-Medina.  Mr. Rodolfo Medina accepted a plea to the lesser charge of violating California Penal Code § 415.

On July 29, 2009, Defendants served each Plaintiff with a Rule 68 offer of judgment in amounts varying from $501 to $15,001, plus court costs and attorneys' fees.  On August 7, 2009, Plaintiff Rodolfo Medina filed a notice of acceptance of Defendants' Rule 68 offer.  Judgment in favor of Mr. Medina and against Defendants was entered on August 28, 2009, in the amount of $1,501.00, plus costs and reasonable attorneys' fees.  No other Plaintiff accepted Defendants' Rule 68 offers.

Starting August 11, 2009, the Court conducted a jury trial on the following claims by Plaintiffs:

    (1)    unlawful entry against Defendants Baxter, Douglas, Prickett, Crutchfield, and Venzon;

    (2)    unlawful seizure against Defendants Baxter, Douglas, Prickett, Crutchfield, and Venzon;

    (3)    excessive use of force against Defendants Baxter, Douglas, Prickett, Crutchfield, and Venzon;

    (4)    malicious prosecution under 42 U.S.C. sec. 1983 against Defendants Baxter, Douglas, Prickett, Crutchfield, and Venzon;

    (5)    failure to supervise against Defendant Sergeant Prickett

    (6)    failure to train against the City of Menlo Park

On August 25, 2009, the jury returned its verdict.  Pursuant to the jury's findings, judgment was entered in favor of Ms. Medina and against Officer Douglas on her excessive force claim in the amount of $10,000 in compensatory damages; judgment was entered in favor of Defendants and against the Plaintiffs on all of the remaining claims.

## DISCUSSION

### I.   Reasonable Fee

Under 42 U.S.C. section 1988, a court may award a party who prevails on a Section 1983 claim "a reasonable attorney's fee as part of the costs."  The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff.  *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009).

Our disposition of Plaintiffs' motion for fees and costs is not the product of any negative assessment of the quality of the lawyering by Plaintiffs' counsel.  In our view, the quality of that lawyering, especially during the trial itself, was excellent.  And while much of the lawyering during the pretrial period occurred outside our field of vision, we suspect that it also was generally of high quality, a factor that we have taken into account in resolving the disputed issues that we address in the pages that follow.

What the law commands us to do is fix an award for fees and costs that is reasonable, a judgment we are to make by applying a set of judicially developed general principles to the specific circumstances of this particular litigation.  We are to determine, in a very specific context, what portion of Plaintiffs' fees and costs Congress intended the Court to shift to Defendants.

In this case, ten plaintiffs sued six defendants on six different legal theories (Plaintiffs actually pled three separate *Monell* theories against one of the defendants, the City of Menlo Park: one pattern and practice theory focused on excessive force, a second pattern and practice theory focused on unlawful seizures/arrests, and a third *Monell*

3

theory based on inadequate training -- but shortly before trial Plaintiffs decided to proceed against the City only on the inadequate training theory).

One plaintiff, Rodolfo Medina, who proceeded on only one legal theory (excessive force) accepted a Rule 68 offer of judgment (for $1,501) shortly before trial.

The other nine plaintiffs rejected Rule 68 offers.  Four plaintiffs sought recovery at trial on a claim that officers entered their residence unlawfully; eight plaintiffs pressed claims based on alleged unlawful seizure; six plaintiffs tried claims of excessive force; six plaintiffs pursued claims of malicious prosecution; all plaintiffs pressed a claim that the sergeant on the scene breached his supervisorial duties; and all plaintiffs claimed that the City breached its duty to adequately train its officers.  Thus counted, Plaintiffs brought 23 claims to trial.

Of the nine plaintiffs who proceeded to trial, only one prevailed (Maria Medina), and she prevailed on only one of her five claims.  While she sought a significant (but unspecified) award for general damages, as well as up to $34,243 for future medical expenses, and while she rejected a Rule 68 offer of $15,001, the jury awarded her the modest sum of $10,000 for all her claimed damages.

The same jury concluded that Plaintiffs *failed* to prove any of the eight alleged unlawful seizures, any of the six alleged malicious prosecutions, the unlawful entry claims, five of the six excessive force claims, the claim based on alleged breach of supervisorial duties, and the claim that the City trained its officers inadequately.

By any reasonable measure, Plaintiffs' success in this litigation was extremely limited.  If we treat as only one claim each of the theories based on alleged unlawful entry, alleged breach of the duty to supervise, and alleged breach of the duty to train, we still contemplate a landscape in which Plaintiffs prevailed on only two of 24 claims (the excessive force claims by Rodolfo Medina, resolved by his acceptance of the Rule 68 offer, and the excessive force claim by Maria Medina, resolved by the jury verdict in her

favor on this theory).  In this setting, the law circumscribes substantially Plaintiffs' entitlement to recover attorneys' fees.

Plaintiffs' counsel purport to recognize this fact and assert that they have eliminated from their fee request work that was undertaken only to advance or support the claims based on malicious prosecution or breaches of the duties to supervise and to train. They contend, however, that virtually all of the work that they did to prosecute the unsuccessful claims based on unlawful entry, unlawful seizure, and excessive force (claims pressed by nine plaintiffs who were unsuccessful at trial on 14 different claims) was necessary to support the two claims on which Plaintiffs prevailed: the excessive force claims by Rodolfo Medina and by Maria Medina.  As compensation for that work, counsel for Plaintiffs seek an award of $737,434.35 in attorneys fees and $21,863.57 in costs.  This petition for fees and costs is unreasonable on its face -- and remains thoroughly unreasonable after careful analysis.

To determine what award for fees and costs would be consistent with applicable legal principles in this setting we have undertaken analyses from more than one perspective and have given careful consideration to the character of the legal and evidentiary challenges that were presented by the two excessive force claims on which plaintiffs prevailed.  We have considered the parties' submissions about loadstar figures and how they should be adjusted.  We have considered the kind of legal work that developing an excessive force case would entail for two plaintiffs whose claims arise out of one compact incident at the same time and in the same place.  We have considered the case from the perspective of looking forward from the lawyers' first contact with this matter -- and from the perspective of looking back from the date of the Rule 68 offers at what counsel say they actually did.  In sum, the awards we order herein are based on consideration of the disputed matters from multiple relevant perspectives, taking fully into account a host of different considerations, including the importance of the civil rights in issue, and examining, in detail, the submitted time sheets and cost bills.

1

### A.    Reasonable Hourly Rate

2    The starting point for determining an award of attorneys' fees is calculation of the

3  "lodestar," a figure that is the product of multiplying the number of hours counsel

4  reasonably expended on compensable tasks by a reasonable hourly rate.  *Hensley v.*

5  *Eckerhart,* 461 U.S. 424, 433 (1983).  Under *Hensley*, the reasonableness of a fee award

6  is determined by answering two questions: "First, did the plaintiff fail to prevail on claims

7  that were unrelated to the claims on which he succeeded?  Second, did the plaintiff

8  achieve a level of success that makes the hours reasonably expended a satisfactory basis

9  for making a fee award?"  *Id*. at 434.

10    The parties do not dispute that Maria Medina and Rodolfo Medina were prevailing

11  parties on their excessive force claims.  To determine appropriate hourly rates, we look to

12  rates prevailing in the San Francisco Bay Area *for similar services* performed by

13  attorneys of reasonably comparable skill, experience, and reputation.  *Missouri v. Jenkins*,

14  491 U.S. 274, 286 (1989).  More specifically, the Court is to consider the time and labor

15  required by counsel; the novelty and difficulty of the questions; the skill requisite to

16  perform the legal service properly; the preclusion of employment due to acceptance of the

17  case; the customary fee; whether the fee is fixed or contingent; time limitations; the

18  amount involved and the results obtained; the experience, reputation and ability of the

19  attorneys; the undesirability of the case; the nature and length of the professional

20  relationship with the client; and awards in similar cases.  *Hensley*, 461 U.S. at 430 n.3.

21    Plaintiffs' counsel contend that they should be awarded attorneys' fees at the rates

22  their large commercial law firm charges paying clients for work on complex commercial

23  cases.  Defendants contend that the rates Plaintiffs seek are far above those charged in the

24  relevant market, which, they suggest, consists of competent lawyers prosecuting legally

25  straight-forward claims that turn on disputes about a set of facts that is quite limited in

26  time and space.

27

28

The two excessive force claims on which Plaintiffs prevailed were neither legally nor factually complicated.  Plaintiffs' counsel were not required to pursue masses of data from obscure sources; they were not required to develop or draw upon any esoteric expertise or to manipulate large bodies of information on subtle theories; they were not required to wrestle with intricate legal theories or to persuade the Court to venture into legally uncharted waters.  The excessive force claims that Plaintiffs litigated here did not remotely parallel, in evidentiary or legal complexity, the kinds of claims that big firm lawyers litigate under securities, anti-trust, or intellectual property laws.  Rather, there is a much closer parallelism (in level of evidentiary and legal challenge) between Plaintiffs' excessive force claims and a personal injury case -- a personal injury case that arose out of one compact historical event and that had no demonstrably dramatic physical consequences.

These observations about the level of professional challenge that these two particular excessive force claims presented reflect no insensitivity to the immense importance of civil rights  --  or to the value of civil rights litigation in disciplining the use of governmental power.  There are few, if any, purposes of civil litigation that are more important than protecting civil rights.  It is recognition of the importance of that purpose that inspired Congress to enact fee shifting statutes in civil rights cases and that inspires courts to set hourly rates for successfully litigating civil rights claims at levels that will neither signal some denigration of the importance of this kind of litigation nor discourage competent lawyers from agreeing to prosecute civil rights cases.  To honor these significant public policies, however, it is neither necessary nor appropriate to fix hourly rates at levels that can be commanded in the private sector only for the most complex and challenging litigation and that will be paid only by large corporate clients -- clients who, presumably, pass along to their customers the considerable costs they incur in such litigation.

Having seen hundreds of civil rights cases litigated in this region over the past two decades, this Court is in a position to take judicial notice of the fact that there are many very competent and committed lawyers in our area who prosecute civil rights claims like these at hourly rates that are far below the figures sought here by Mr. Gonzalez ($750 per hour) and Mr. Plunkett ($675 per hour).  Thus, it clearly is not necessary here in the Bay Area, as Mr. Gonzalez contends, to award fees at these high levels in order to induce good lawyers to accept these kinds of cases.  There are many very good lawyers who have chosen not to practice is big commercial firms.  And there are good lawyers in big commercial firms who will do this kind of work, as a matter of conscience, for rates of compensation that fall below the levels they charge their major corporate clients.

Additional factors that *Hensley* instructs us to consider also support our finding that the high rates sought by Plaintiffs' counsel are not justified here.  No remarkable amount of time or labor would be required to litigate two excessive force claims like these -- arising, as they did, out of the same limited interaction with police and resulting in no substantial special damages.  Litigating the two excessive force claims did not require counsel to grapple with novel or difficult legal questions -- or to take any risks rooted in legal theory.  Nor would litigating these two claims preclude counsel from accepting other employment.  Nothing in the circumstances imposed any special time limitations or pressures on counsel or the parties.  And we have seen no evidence that these excessive force claims would have been viewed as 'undesirable' in the Bay Area legal community. Even if some lawyers with offices in Menlo Park might have felt some reluctance to take on that City's police department, the Bay Area is home to hundreds of lawyers who litigate civil rights cases regularly and who would have no inhibiting connections with Menlo Park.

Further, we note that the way defense counsel litigated this case seems to have been professionally responsible and restrained.  There is no evidence that defense counsel resisted appropriate discovery, engaged in delaying or obstructive tactics, filed frivolous

8

or time-consuming motions, or otherwise drove up costs or magnified adversarial tensions.  No dispositive motions were filed.  In fact, there was virtually no motion activity in this case at all until about the time Defendants made their Rule 68 offers.

Plaintiffs have failed to adduce sufficient evidence to establish that, in a case like this (two straight-forward excessive force claims arising out of one incident), courts in California have granted fee awards at the hourly rates sought here by Plaintiffs' counsel. While Plaintiffs' evidence shows that other courts have awarded fees in some cases that are in the vicinity of the rates sought here, Plaintiffs have failed to show that there is instructive (let alone controlling) parallelism between the evidentiary, legal, or other challenges presented in those cases and the challenges that were presented by the two excessive force claims in this case.

Having considered all the *Hensley* factors and all the evidence presented, having given full weight to the importance of protecting civil rights, and having taking into account the distribution of lawyering talent in the Bay Area and the attorneys' fees that are charged here, the Court finds that it would be reasonable to award fees in this case (for the excessive force claims) at the following hourly rates:

| Attorney | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| A. Gonzalez | $750 | $500 |
| S. Plunkett | $675 | $450 |
| T. Cheung | $560 | $350 |
| C. Chen | $520 | $350 |
| N. Naugle | $455 | $300 |
| S. Saluja | $350 | $250 |
| A. Merchant | $350 | $250 |

1

**B.     Number of Hours Reasonably Expended**

2     The most difficult challenge that Plaintiffs' fee petition presents for the Court is to

3 make a judgment about the number of hours it would have been reasonable for competent

4 counsel to commit to litigating the two excessive force claims up to the date the Rule 68

5 offers were made.  This task is particularly difficult in a situation like this, where

6 Plaintiffs pressed a large number of claims that were in some senses related, but prevailed

7 on only a very small percentage of the causes of action they litigated.

8     Before we turn to some of the more difficult parts of this undertaking, we point to

9 some well-established principles that apply to all fee determinations.  We cannot award

10 fees for work that was unnecessary, duplicative, or clearly took longer than could be

11 justified.  *Hensley*, 461 U.S. at 434.  Counsel for Plaintiffs claim that they have

12 addressed these concerns by reducing the hours claimed across the board by 10%.  We are

13 not satisfied that such a reduction is sufficient here.  Seven different lawyers billed time

14 to this case.  In a reasonable real world, no more than two lawyers would have been

15 needed to litigate the two excessive force claims on which Plaintiffs prevailed.  Every

16 lawyer who participates in any significant measure in preparing a case must 'study the

17 file' and acquire at least basic information about the nature of the claims and defenses and

18 the parties' principal contentions about the facts and evidence.  Without that basic

19 knowledge, the risk of malpractice is extreme.  When seven lawyers, instead of two,

20 participate in the preparation of a case, a great deal of the "learning curve" time will not

21 be compensable.  But we have no confidence that reductions sufficient to adjust for such

22 unnecessary work have been made.

23     Moreover, the lawyer who billed the greatest number of hours to this case was the

24 least experienced -- while undoubtedly earnest, she had been a member of the bar for less

25 than a year when she began committing time to this matter.  A lawyer with so little

26 experience is very likely to be much less efficient than a more seasoned litigator.  But we

27 have no reason to believe that Congress intended Section 1988 to serve as a means for

28

10

funding the professional development of young lawyers -- especially when the party

paying the tab prevailed on a very large percentage of the case.  Finally, it is obvious that

more time than otherwise would be necessary or justifiable will be committed simply to

communication and coordination between counsel when seven lawyers (instead of two)

participate in developing a case.  These considerations mandate some reduction in

Plaintiffs' award.  But the principal bases for reductions are explored in the paragraphs

that follow.

Conceding that none of the nine plaintiffs who proceeded to trial accepted the Rule

68 offers made by Defendants, and that the only plaintiff who prevailed on any claim

(Ms. Medina) was awarded less than Defendants' offer of judgment ($15,001), counsel

for Plaintiffs do not contend that they are entitled to fees for time spent in trial.  Plaintiffs'

fee petition seeks compensation, however, for a large number of hours that their counsel

committed to this litigation after Defendants made their Rule 68 offers.  That post-offer

work is not compensable.  Rule 68 provides that if the judgment obtained is not more

favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer

was made.  Thus, pursuant to Rule 68, Plaintiffs may not recover any attorneys' fees

incurred after July 29, 2009.  *Marek v. Chesny*, 473 U.S. 1, 9 (1985).

The following chart sets forth the total number of hours for which Plaintiffs'

counsel are seeking compensation in this proceeding, the number of hours billed before

the Rule 68 offers were made, the number of hours billed before trial but after those Rule

68 offers were made, and the number of hours billed for work on the instant motion for

fees.

| Attorney | Hours Requested | Pre-Rule 68 Attorney Hours billed through 7/29/09 (calculated by subtracting post-7/29/09 hours from hours requested) | Post-Rule 68 Attorney Hours billed (7/30/09 - 8/10/09) | Attorney Hours billed for Fees Motion (8/27/09 - 9/22/09) |
|---|---|---|---|---|
| A. Gonzalez | 240.85 | 165.55 | 51.6 | 23.7 |
| S. Plunkett | 31.30 | 12.8 | 18.5 | 0.0 |
| T. Cheung | 262.60 | 161.6 | 64.4 | 36.6 |
| C. Chen | 62.30 | 62.2 | 0.0 | 0.1 |
| N. Naugle | 485.40 | 410.5 | 71.2 | 3.7 |
| S. Saluja | 569.45 | 433.5 | 109 | 26.95 |
| A. Merchant | 51.40 | 51.4 | 0.0 | 0.0 |
| TOTAL Hours | 1703.3 | 1297.55 | 314.7 | 91.05 |

Because we may not compensate counsel for fees billed after the Rule 68 offers were made, we may not include in the fees award any compensation for 314.7 hours in the third column of this chart.

In support of their request for an award of more than $700,000, Plaintiffs declare that they have eliminated from their fee petition any claim for hours devoted only to the malicious prosecution claims and the claims based on the alleged breaches of the duties to supervise and to train. Plaintiffs have failed to make a persuasive showing, however, that they succeeded in this undertaking. In fact, Plaintiffs have failed to demonstrate, in detail, how they went about attempting to accomplish this task.

Moreover, it is not clear, at least from how the case was tried and what evidence was adduced during the trial, that Plaintiffs' counsel committed any significant time solely to the claims based on alleged breaches of the duty to supervise or the duty to train. Plaintiffs presented virtually no evidence to support their *Monell* claim. And, to try to prove their claim based on failure to supervise, they seem to have relied almost

exclusively on the evidence they adduced in support of the claims based on unlawful entry, unlawful seizures, and excessive force.  Developing the malicious prosecution claim more clearly required some independent work, but the viability of this claim also depended fundamentally on Plaintiffs' ability to prove their Fourth Amendment causes of action.

Interestingly, Plaintiffs' counsel did not disclose the number of hours that they determined were committed only to the claims of malicious prosecution, failure to supervise, and failure to train.  Thus, we do not know what percentage of the total hours that Plaintiffs' lawyers billed to this matter (before trial) Plaintiffs now allocate to work that was done only on these three kinds of claims.  So we don't know how many hours, or what percentage of the total hours logged, Plaintiffs have eliminated from this fee petition.  It is tempting to infer that the failure to identify that number of hours is attributable to the fact that the number would represent only a small percentage of the total hours devoted to the case before trial -- thus exposing the fact that Plaintiffs are seeking a fee award for a very large percentage of the total lawyer time that was devoted to this case prior to the Rule 68 offers.

These features of Plaintiffs' fee petition are consistent with its central theoretical underpinning -- which is that when a civil rights plaintiff prevails on one of many claims that 'arise from a common nucleus of operative fact,' virtually all of the hours counsel spent on all the 'related' claims are compensable.  The assumption that informs this proposition is that if the one successful and the many unsuccessful claims arose out of a common nucleus of operative fact, a competent lawyer who was working up the one successful claim also necessarily would have done virtually all of the work that ended up supporting the unsuccessful claims.

While this approach appears, at first blush, to square with Ninth Circuit precedents, it loses most of its persuasive power on closer examination.  To assess the viability of this theory, we turn to our Circuit Court's recent exposition of similar issues

in *McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir., April 24, 2009) (as amended).

Tracking the Supreme Court's two stage analysis in *Hensley,* the *McKown* court noted

that it would be improper for a trial court to reduce a fee award solely on the ground that

the plaintiff had failed to prevail on some of his claims as long as both the successful and

the unsuccessful claims involved "a common core of facts" or were based on "related

legal theories."  While the appellate courts have not provided clear criteria that trial courts

are to use to determine what constitutes a "common core of facts,"[1] it is certainly arguable

that at least some of the plaintiffs' claims that are based on the officers' conduct after they

were inside Ms. Medina's residence on September 1st were based on a common core of

facts, as that phrase has been rather loosely used in this doctrinal setting by higher federal

courts.

But to concede this much is a far cry from conceding that Plaintiffs are entitled to a

fee award for all the work their lawyers reasonably devoted to any claim that was not

clearly "unrelated" to the claims on which the two plaintiffs here prevailed.  After

acknowledging that losing related claims would not justify a fee reduction under the first

stage of the *Hensley* analysis, the *McCown* court clearly re-inserted consideration of lost

claims or causes of action in the second stage of the *Hensley* analysis.  It is in that second

stage that courts are to assess the overall level or degree of the plaintiffs' success -- and to

reduce the fee award if the level of success would make it unreasonable to award

compensation for all hours reasonably spent on related but unsuccessful claims.  In other

words, *McCown* made it clear that courts should do in the second stage of the *Hensley*

analysis what they were told not to do in the first stage of that analysis.

---

[1]    Whether claims brought by different plaintiffs against different defendants that are based on different discrete acts by those different defendants would be deemed to involve a common core of facts is not a self-answering question -- even when the claims are based on the same legal theory.  But we suspect that it is likely that appellate courts would conclude that at least the claims for alleged unlawful seizure and for excessive force involved a common core of facts.  It is less clear that appellate courts would so deem the unlawful entry claims.

More specifically, the *McCown* court insisted that in assessing the level of a plaintiff's success, a trial court must take into account the full scope of the case as pled and litigated by the plaintiff and must consider, when deciding whether to reduce a fee award, whether plaintiff lost any significant number of claims, even claims that were related to a claim on which the plaintiff prevailed.  In *McCown*, the appellate court noted that the district court "indicated that it was unsure whether the fact that eight of McCown's nine claims were dismissed at summary judgment 'figures into the calculation' of attorney's fees.  We conclude that it does."  *McCown*, 565 F.3d at 1103. Our Court of Appeals went on to hold that "attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit."  *Id.*

Driving home the point that in assessing the extent of a plaintiff's success it is essential for courts to take into account whether and to what extent the plaintiff failed to prevail even on related claims, the *McCown* court went on to point out that "[a]lthough the district court need not be so mechanical as to divide the amount of fees and costs requested by the number of claims, and therefore [in this case] grant one-ninth of the fees and costs, the district court should take into account McCown's limited success when determining a reasonable award."

*Farrar* and *McKown* also emphasize that, in assessing a plaintiff's success, it is essential to compare the amount of damages the plaintiff recovered to the amount of damages the plaintiff sought.  *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992).  In the case at bar, of the nine plaintiffs who went to trial, only Ms. Medina was awarded damages -- and the amount she was awarded ($10,000) included either only a fraction of her requested medical special damages or a modest award for the considerable emotional distress that she attributed to Officer Douglas's conduct.  She recovered no damages at all on her other four claims.

Nor is it clear that the victory on the one excessive force claim delivered any appreciable benefit to the public.  While every enforcement of a civil right delivers some benefit to the public, and while every such benefit is important in political theory, we have no reason to ascribe any special significance to the benefit delivered as a result of Ms. Medina prevailing on this one claim.  No one tried to defend an officer using a citizen as a shield or "buffer" against possible assaults on the officer by others.  No one tried to defend an officer restraining Ms. Medina by choking her with his baton.  Both police experts conceded, freely, that neither kind of conduct was acceptable.  So the jury's muted condemnation of Officer Douglas's use of force broke no new conceptual ground and established no new guidelines for police conduct.  In short, Officer Douglas's conduct offended guidelines that already were well established and that no one would seriously dispute.  Nor did Plaintiffs introduce any evidence that the kind of conduct that the jury condemned was widespread; Plaintiffs pointed to no other occasion on which any police officer used the method that the jury condemned in this case.

We suspect that our Court of Appeals is insisting that, in the second stage of the *Hensley* analysis, trial judges attend carefully to the relationship between the claim on which a plaintiff prevailed and the full scope of her lawsuit, as well as to the relationship between the amount of damages she actually recovered and the amount she sought, at least in part because the Court of Appeals recognizes that whether successful and unsuccessful claims are related, i.e., whether they "involve a common core of facts," is a question whose answer, standing alone, teaches us little that we really need to know in order to reason reliably about what percentage of a plaintiff's attorney's fees we should shift to a defendant who has prevailed on some of the significant claims.

What we want to know, in the critical second stage of the *Hensley* analysis, is not whether, generally, some events have some connection in time or space, or could be linked through some legal theories.  What we want to know is what a competent lawyer would do to develop for trial the two specific excessive force claims that were pressed in

this case by Maria and Rodolfo Medina.  Would such a lawyer have sued six defendants?
Would such a lawyer have devoted so much time to trying to prove that four officers were
lying about why they entered the residence?  Would such a lawyer have spent so much
time developing evidence about how five people other than Maria and Rodolfo were
"seized" on the night of September 1st?  Would such a lawyer have devoted so much
time to trying to develop evidence that seven other people were victims of excessive force
(largely at the hands of different officers)?  Would such a lawyer have devoted time to
developing evidence about how eight other people had been affected emotionally or
psychologically by their interaction with the police?

These questions are self-answering.  No competent lawyer would have committed
substantial pre-trial resources to these matters in order to prove that Maria and Rodolfo
had been treated with more force than was justified on the night of the party.  Stated
differently, there is a radical difference between the scope of the work that a reasonable
lawyer would devote to developing all these other claims for all these other plaintiffs and
the scope of the work a reasonable lawyer would devote to developing two legally
identical and simple claims for two plaintiffs.

Thus, *Farrar* and its progeny have decimated the notion that all work done on
claims that are in some sense "related" is compensable as long as a plaintiff prevailed on
one of those claims.  As noted in *McCown*, the seeds of that decimation were planted in
*Hensley*, where the Court insisted that, in the final analysis, the size of a fee award must
reflect "a level of success that makes the hours reasonably expended [on the successful
claim] a satisfactory basis for making a fee award."  In other words, it is now clear that
the reasonableness of a fee must be determined primarily by reference to the level or
degree of success achieved by the plaintiff.  So, a plaintiff whose success is very limited
is permitted to recover only limited portions of her fees -- even if the hours her lawyer
committed to the case were not clearly excessive and even if the hourly rate her lawyer
billed fell within an approved range.  *See McCown,* 565 F.3d at 1101-1102.  In other

17

1   words, the courts have concluded that when Congress adopted the relevant fee shifting

2   statutes, it decided that when a plaintiff prevailed on only a small fraction of the claims he

3   litigated, or achieved only a small fraction of the relief or remedy he was pursuing

4   through his case, it simply was not fair to shift to the predominantly successful defendant

5   the full load of fees incurred by the plaintiff -- even if it was arguable that most of the

6   causes of action in the suit were in some sense related.

7          Having said all this, we are left with the problem of how to determine by how

8   much to reduce the plaintiffs' fee request.  Recognizing that courts have criticized

9   approaches to this problem that are too obviously too crudely mechanical, we have

10  informed the exercise of our discretion (and the fulfillment of our responsibility) by

11  approaching our task in two different ways.  In the first of these we have tried to identify,

12  lawyer by lawyer, the percentage of the total work done on all of the unlawful entry,

13  seizure, and excessive force claims that can be attributed fairly to work on Maria and

14  Rodolfo's excessive force claims.  In the second approach, we have tried to estimate the

15  number of hours we think a reasonable lawyer would spend on the various components of

16  the task of getting a case ready for trial that consisted of the two closely related excessive

17  force claims on which Plaintiffs prevailed in this case.  We undertook this second analysis

18  in order to provide a check for fairness on the product of the first method.

19         Trying to identify a percentage of the total time claimed that is fairly allocable to

20  pre-offer work that would reasonably have been committed to this litigation by Plaintiffs'

21  counsel if the only two claims had been for excessive force is quite a difficult task and

22  one that involves, necessarily, some element of arbitrariness.  Counting as a separate

23  claim each cause of action against each accused officer, Defendants contend that

24  Plaintiffs prevailed on only 1 of 65 claims that were tried to the jury (63 claims against

25  the individual officers, the supervisorial claim against Sergeant Prickett, and the *Monell*

26  claim against the City).  Crediting (for these purposes) Plaintiffs with 'success' also on

27  Rodolfo Medina's excessive force claim, Defendants argue that the fee award should be

28

discounted by a straight ratio of 2 to 66 (or 0.03).  We decline to adopt this formula, however, because it is clear that a competent lawyer who was trying to build a case only on the two successful excessive force claims would have done some of the work that Plaintiffs' counsel devoted to developing at least some of the seizure claims and some of the other excessive force claims.

After considering other alternatives, we concluded that the most reasonable approach to this task would be rooted in the way the Special Interrogatories were framed. If we ignore all the interrogatories about the claims sounding in malicious prosecution, failure to supervise and failure to train, and if we ignore all the interrogatories about the nine plaintiffs' claims for damages, we determine that the jury was asked to resolve either 21 or 18 separate claims -- the difference being whether we count the questions about unlawful entry by each of the four separately accused officers as one claim or as four claims.  See Special Interrogatories Nos. 1-30 (Docket No. 107).  Using this approach, and taking into account the fact that Rodolfo Medina is deemed to be the prevailing party on his excessive force claim, Plaintiffs prevailed on either 2 of 22 claims (9%), or on 2 of 19 claims (10.5%).

As we have acknowledged, however, a competent plaintiffs' attorney who was developing only the two successful claims also would have done some of the work that Plaintiffs' counsel did in this case to develop the unsuccessful claims of unlawful seizure and excessive force.  That being the case, it would not be fair to base an allocation percentage solely on the formula that our review of the Special Interrogatories would yield.  Instead, we conclude that it would comport more closely with reality to adjust the presumptive allocation percentage upward to 15%.

Had Plaintiffs not so obviously over-staffed this case and not committed so much time to work on legal issues that had no bearing on the excessive force claims (e.g., in their work on jury instructions), and had Plaintiffs' counsel shown more restraint in seeking fees through their petition, the Court would have been inclined to increase,

modestly, this upward adjustment.  But, given all the circumstances, and given the outcome of the other method (described below) that we have used to identify a reasonable range of fees for the two excessive force claims, we decline to make any additional adjustment in the presumptive 0.15 fractional multiplier.

Working from this presumptively applicable fractional multiplier, we will now examine the billing by each of the seven Plaintiffs' attorneys to determine whether additional adjustments should be made to account for differences in the subjects or tasks to which individual lawyers appear to have devoted their time.  Through this exercise we conclude that the size of the multiplier should vary among Plaintiffs' counsel depending on how their time was distributed among issues and clients.

**Arturo Gonzalez**: The Court infers that, as lead counsel, Mr. Gonzalez billed time on all claims, including those on which Defendants prevailed.  Thus, his time is reduced to 0.15 of the requested hours, to reflect the portion of his time spent on prevailing claims.

**Stuart Plunkett**: The Court accepts Plaintiffs' representation that virtually all of the time Mr. Plunkett billed to this case before the Rule 68 offers were made was directed toward developing and defending against expert medical testimony.  Because the only issues to which that testimony was relevant arose out of Ms. Medina's successful excessive force claim, we conclude that all of Mr. Plunkett's pre-offer time is compensable.

**Tiffany Cheung:** Ms. Cheung was the attorney primarily responsible for defending Ms. Medina at her deposition and for preparing and defending Rodolfo Medina for his deposition.  Ms. Cheung billed 12 hours for preparing for Rodolfo Medina's deposition. Plaintiffs' Fee Chart at 23.  That figure clearly is excessive.  Rodolfo Medina pressed only one claim, it was not complicated either legally or factually, and at least some of the evidence pertinent to its disposition was developed in connection with the

claims of other plaintiffs.  Ms. Cheung billed another 2.4 hours reviewing and summarizing Mr. Medina's deposition transcript.  *Id.* at 25.

Plaintiffs acknowledge that Ms. Cheung spent an additional 12.4 hours researching the potential withdrawal of Mr. Medina's guilty plea in the state court criminal prosecution -- work that clearly would not have been necessary to develop Mr. Medina's excessive force cause of action in this case.

Ms. Cheung also prepared Sam Salgado and Hector Valencia for depositions that consumed 4.8 hours -- but she billed 21.6 hours of preparation time for these two discovery events.  It was not reasonable to commit anywhere near that amount of time to preparing for these two depositions.

In addition, Ms. Cheung billed 74.8 hours, 62 of which were billed before the Rule 68 offers, to preparing and arguing jury instructions -- an amount of time that could never be justified for a case with only one kind of claim (excessive force).

Given the excesses just described, we find no reason to adjust upward the presumptive 0.15 fractional multiplier for Ms. Cheung's time.

**Christina Chen:** Plaintiffs' counsel's time records indicate that Ms. Chen took the deposition of Defendant Crutchfield (who was not accused of using excessive force on either Maria or Rodolfo Medina) and that she defended the deposition of unsuccessful Plaintiff Vasquez-Medina.  We see no reason to adjust upward the 0.15 multiplier for the hours Ms. Chen billed in this case.

**M. Natalie Naugle:** Ms. Naugle prepared Maria Medina for her deposition and defended her during it -- tasks that required her to grapple with Ms. Medina's medical records.  Ms. Naugle also was involved in much of the percipient discovery -- including the important deposition of Officer Douglas (whom the jury found had used excessive force in restraining Ms. Medina).  Because of her central role in developing the evidence on which the excessive force claims turned, we will adjust upward the multiplier for Ms. Naugle's time to 0.25.

**Sarina Saluja**: Among all of Plaintiffs' counsel, Ms. Saluja billed the largest number of hours.  Ms. Saluja was responsible for much of the day-to-day handling of this litigation, particularly in discovery.  Ms. Saluja took the depositions of Officers Prickett, Venzon and Baxter, and defended the depositions of several Plaintiffs and witnesses, including W. Campos, J. Espinoza, J. Campos, M. Espinosa, and B. Soto.  But because Ms. Saluja appears to have attended to all the litigated claims, because she brought relatively little experience to her work, and because some of her work could have been handled by administrative staff, we conclude that the presumptive 0.15 multiplier should be used to determine the amount of her time for which Plaintiffs are entitled to compensation in these proceedings.

**Alexander Merchant:** Mr. Merchant took the deposition of Officer Schuler and defended the depositions of Oscar Campos and Francisco Leon.  Mr. Merchant's hours will be reduced to 0.15 of his billed time.

The following chart reflects the Court's determination of the reasonable number of hours spent by each attorney on the prevailing claims:

| Attorney | Hours Billed through 7/29/09 | Multiplier | Reasonable Hours through 7/29/09 |
|---|---|---|---|
| A. Gonzalez | 165.55 | 0.15 | 24.83 |
| S. Plunkett | 12.8 | 1.0 | 12.80 |
| T. Cheung | 161.6 | 0.15 | 24.24 |
| C. Chen | 62.2 | 0.15 | 9.33 |
| N. Naugle | 410.5 | 0.25 | 102.63 |
| S. Saluja | 433.5 | 0.15 | 65.03 |
| A. Merchant | 51.40 | 0.15 | 7.71 |
| TOTAL Hours | | | 246.56 |

### C.    Calculation of Lodestar Amount

When we multiply the number of hours that we find are fairly allocated to the claims on which the Medina Plaintiffs prevailed by the adjusted hourly rates that we have identified as appropriate for the successful parts of this case, the resulting lodestar figure is $78,898.50. We set forth our calculation in the following chart.

| Attorney | Reasonable Hours through 7/29/09 (not including time on fees motion) | Reasonable Hourly Rate | Reasonable Fees |
|---|---|---|---|
| A. Gonzalez | 24.83 | $500 | $12,415.00 |
| S. Plunkett | 12.8 | $450 | $5,760.00 |
| T. Cheung | 24.24 | $350 | $8,484.00 |
| C. Chen | 9.33 | $350 | $3,265.50 |
| N. Naugle | 102.63 | $300 | $30,789.00 |
| S. Saluja | 65.03 | $250 | $16,257.50 |
| A. Merchant | 7.71 | $250 | $1,927.50 |
| TOTAL Fees | | | $78,898.50 |

Through trials, pretrial case management, discovery disputes, and a large number of settlement conferences, this Court has had extensive exposure to the litigation of civil rights actions in general, and excessive force claims in particular, in the Northern District of California.  Based on that experience, it is this Court's view that $78,898.50 falls within the zone of figures that would constitute reasonable compensation for fees billed by competent attorneys in this jurisdiction to develop the Medina Plaintiffs' excessive force claims up to the time Defendants made their Rule 68 offers.

To further test the reasonableness of a fee award of this amount for most of the pretrial development of the two successful claims in this case, the Court employed an

alternative approach to the multiplier method used above.  In this alternative approach, the three former litigators who currently work in this Court's chambers worked together to identify each of the major kinds of activities that a competent lawyer would undertake in order to develop a two-claim excessive force case like this for trial, as well as each of the kinds of activities that a defendant was likely to initiate during the pretrial period that would require a commitment of time by Plaintiffs' counsel.  After working jointly to identify all the types of pretrial work that a case like this would involve, each former litigator separately estimated the number of hours that he or she thought a reasonably competent litigator would need to devote to each category of activity during the pretrial period.  In developing these estimates, we assumed that opposing counsel was relatively straightforward and that motion practice would consume only a modest amount of time.

Two of the three former litigators estimated that a competent lawyer would devote about 150 hours to developing this kind of case through most of the pretrial period, but the other former litigator estimated that the same categories of work would consume upwards of 350 hours of competent lawyer time.  Assuming that one mid-level partner and one mid-level associate would share the work on the case, we then applied three different blended hourly rates to these estimates: $350/hour, $400/hour, and $450/hour.  Multiplying separately each of the two estimates of hours (150 or 350) by each of the blended hourly rates yielded a range of estimated fees between $52,500, on the economical end, and $157,500, on the generous end.  It gives us some comfort that the figure ($78,898.50) that the fractional multiplier method yielded (above) fell well within this range.

### D.    Fees on Fees

Plaintiffs' counsel seek compensation for an additional 91.05 hours billed by five attorneys for work on the motion for fees and costs.  The fact that five different lawyers were tasked to work on the fee motion is further evidence of the inefficiency caused by

24

the obvious over-staffing of this case.  If granted, counsel's request would provide compensation for more than two weeks of full-time lawyering work on nothing but the motion for fees.  It would be transparently unreasonable for a lawyer to devote this much time to a fee petition in a case that was limited to two excessive force claims that arose from one compact set of interactions between the police and two plaintiffs.

Limiting the compensable work on the fees motion to the claims on which Plaintiffs prevailed, we find that a competent lawyer could not have justified committing more than about 20 hours to litigating a motion like this.  Thus, we will award the prevailing plaintiffs reasonable compensation for 20 hours of lawyer time at a blended rate of $450 per hour, for a total award for fees on fees of $9,000.

## II.  Costs

Plaintiffs request $21,863.57 in costs.  Pursuant to Rule 68, Plaintiffs may not recover costs incurred after Defendants made their offers of judgment on July 29, 2009.  Furthermore, all Plaintiffs except Rodolfo are jointly and severally liable for Defendants' costs incurred after that date.

Defendants have filed a bill of costs totaling $19,530.20.  Plaintiffs did not file any objection to Defendants' bill of costs.  As the prevailing parties at trial on all claims except Maria Medina's cause of action for excessive force, Defendants are entitled to recover the vast majority of their costs.

### A.  Plaintiffs' Taxable Costs

The following expenses may be taxed as costs under 28 U.S.C. section 1920:

   (1) Fees of the clerk and marshal;

   (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

   (3) Fees and disbursements for printing and witnesses;

25

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828.

### 1.     Service of Process

Fees charged by private process servers are recoverable under sec. 1920. *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990).  Plaintiffs may recover the **$155.20** sought for service of process fees.  Plaintiffs may not, however, recover the process server fees of $379.60 incurred after Defendants made the offer of judgment on July 29, 2009.  Fed. R. Civ. Proc. 68(d).

### 2.     Deposition transcripts

Plaintiffs seek $15,521.63 in reporting fees for depositions, most of which were noticed by Defendants.  Of that amount, **$10,719.60** was incurred on or before July 29, 2009, when Defendants made their Rule 68 offers.  Given that Defendants noticed most of these depositions, and that it is at least arguable that most of them yielded some evidence that could have been useful in litigating the two successful excessive force claims, the Court will not reduce the amount sought for this category of expense.  The Court therefore awards $10,719.60 to Plaintiffs Maria Medina and Rodolfo Medina for deposition transcripts.

However, Plaintiffs' request to recover **$1340.00** for criminal trial transcripts is denied because the transcripts of the prosecution of Messrs. Valencia, Salgado, Anguiano and Espinoza were not reasonably necessary to litigate Rodolfo Medina's or Maria Medina's excessive force claims.

### 3.      Printing and Witness Fees

Plaintiffs seek to recoup expert witness fees for Defendants' medical expert, John Missirian ($800), and Defendants' police procedures expert, Jared Zwicky ($200), in the total amount of $1,000, in addition to the court reporter fees for taking their depositions. Because these fees were incurred after Defendants made their Rule 68 offers, Plaintiffs may not recover these fees.

### 4.      Copying Expenses

The amount sought by Plaintiffs for copying, **$11.50**, appears reasonable and will be allowed.

### 5.      Docket Fees

The **$350** filing fee will be allowed pursuant to Section 1920.

### B.      Other out-of-pocket expenses

Under § 1988, the prevailing party may recover reasonable out-of-pocket expenses that would normally be charged to a fee paying client. *Dang v. Cross,* 422 F.3d 800, 814 (9th Cir. 2005) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir.1994)).  Thus, reasonable expenses, though greater than taxable costs, may be proper where they were they were appropriately incurred.

### 1.      Air Freight

Here, Plaintiffs seek unsubstantiated air freight charges totaling **$367.43**. Plaintiffs have not demonstrated that any of these charges were reasonably necessary, and such expenses will not be awarded as costs against Defendants.

### 2.      Courier Services

Plaintiffs seek **$689.75** in courier fees for delivering chambers copies of e-filed documents to the Court.  These expenses ranged from $75 to $214.75 per delivery.  These charges are excessive -- in part because a commercial delivery service such as Federal Express presumably would have been sufficient and would have charged much less to complete the same tasks.  Because Plaintiffs have failed to justify these expenses, they will not be awarded.

Plaintiffs also seek **$122.86** in "messenger service" fees that are unsubstantiated. They are disallowed because Plaintiffs have not demonstrated that they were reasonably necessary.

### 3.      Video Services

Plaintiffs seek to recover **$590** for video services at the deposition of Janette Lanier, in addition to the court reporter fees incurred for that deposition.  The Court declines to award costs for this video service on the ground that Plaintiffs have failed to show that this expense was reasonably necessary and on the ground that it appears to be duplicative of the $384.15 allowed for the stenographic reporting of the Lanier deposition.

Nor will the Court permit Plaintiffs to recover the **$1,500.00** they seek for video project manager fees; Plaintiffs have not demonstrated that these expenses were reasonably necessary.  *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993).

### 4.      Telephone charges

Plaintiffs seek **$6.24** in long distance telephone charges.  This amount appears to be reasonable, and will be allowed as costs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5. Document Retrieval

Plaintiffs request reimbursement of an unsubstantiated expense of **$154.10** for "Document Retrieval Service."  Because this expense is not unexplained, it is denied.

### C. Total Award of Costs to Plaintiffs

The costs awarded to Plaintiffs Maria Medina and Rodolfo Medina total $11,242.54.

### D. Award of Costs to Defendants

As the prevailing parties on Plaintiffs' claims of unlawful entry, unlawful seizure, malicious prosecution, supervisorial liability, failure to train, and the seven unsuccessful claims for excessive force, Defendants are entitled to an award of costs against all Plaintiffs except Rodolfo Medina (who avoided exposure to costs by accepting the Defendants' $1,501 Rule 68 offer).[2]  The Court is satisfied that the costs sought by Defendants were reasonably incurred during litigation in the requested amount of $19,530.20, and awards that amount to Defendants and against all Plaintiffs except Rodolfo Medina.

### CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for attorneys' fees and costs.  The Court enters the following ORDERS:

---

[2]     Because Maria Medina rejected Defendants' Rule 68 offer, which exceeded the award she received from the jury, she is liable for all defense costs incurred after the Rule 68 offer was made. But Defendants also were the prevailing parties on all of Ms. Medina's other claims: unlawful entry, unlawful seizure, breach of the duty to supervise, and breach of the duty to train.  Because Defendants prevailed  on the vast majority of the claims that Ms. Medina pressed, because they offered her more by way of a Rule 68 judgment than she won at trial on the one claim in which she was successful, and because she and Rodolfo are recouping some of their costs, we decline to reduce her liability for Defendants' costs.

1.    Plaintiffs Rodolfo Medina and Maria Medina are awarded $78,898.50 in attorneys' fees for work performed in litigating their excessive force claims;

2.    Plaintiffs Rodolfo Medina and Maria Medina are awarded $9,000 in attorneys' fees for work on the fees motion;

3.    Plaintiffs Rodolfo Medina and Maria Medina are awarded $11,242.54 in costs;

4.    Except as otherwise ordered herein, Plaintiffs' motion for attorneys' fees and costs is DENIED;

5.    Defendants are awarded $19,530.20 in costs to be taxed against Plaintiffs Maria Medina, Walter Campos, Hector Luis Valencia, Javier Anguiano, Samuel Salgado, Joel Antonio Vasquez-Medina, Jose Jesus Espinosa, Francisco Leon, and Oscar Campos.

**IT IS SO ORDERED.**

Dated: October 2, 2009

_____
WAYNE D. BRAZIL
United States Magistrate Judge